### Jay Wilson v. The State.

No. 4135. Decided October 25, 1916.

**1.—Murder—Continuance—First Application—Rule Stated.**

While a continuance is no longer a matter of right, even on first application, yet when overruled, on motion for a new trial the allegations therein should be considered in the light of the evidence heard on the trial, and if the absent testimony would have been material to some issue in the case and proper diligence has been used to secure the attendance of the absent witness, a new trial should be granted.

**2.—Same—Continuance—Diligence—Materiality of Testimony.**

Where, upon trial of murder, the defendant presented his first application for a continuance, and it appeared from the record on appeal that the alleged testimony of the three absent witnesses was material to the defense and that proper diligence had been used to procure these witnesses, a new trial should have been granted, although one of the witnesses may have wilfully absented himself and some of the testimony was cumulative. Prendergast, Presiding Judge, dissenting.

**3.—Same—Manslaughter—Charge of Court.**

Where, upon trial of murder and a conviction of said offense, the evidence raised the issue of manslaughter, a requested charge thereon should have been submitted, in view of the failure of the court to submit this issue in his main charge. Prendergast, Presiding Judge, dissenting.

**4.—Same—Accidental Shooting—Charge of Court.**

Where, upon trial of murder, the evidence did not raise the issue of an accidental discharge of the pistol from which the killing resulted but showed an intentional firing of the same by the defendant, there was no error in the court's refusal to submit a requested charge presenting that issue.

**5.—Same—Evidence—Res Gestae—Declarations of Defendant.**

Where, upon trial of murder, it appeared that defendant made certain exculpatory declarations almost immediately after the shooting while he was still laboring under the excitement attendant upon the shooting, etc., the same should have been admitted in evidence as res gestae of the transaction. Prendergast, Presiding Judge, dissenting.

Appeal from the District Court of Clay. Tried below before the Hon. Wm. M. Bonner.

Appeal from a conviction o_ murder; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the case.

*H. F. Weldon* and *Arnold & Taylor,* for appellant.—On question of refusing continuance: Taylor v. State, 184 S. W. Rep., 224; Beard v. State, 55 Texas Crim. Rep., 154, 115 S. W. Rep., 592; Sharp v. State, 61 Texas Crim. Rep., 247; Gathright v. State, 85 S. W. Rep., 1076; Phipps v. State, 31 id., 397; Fossett v. State, 41 Texas Crim. Rep., 400, 55 S. W. Rep., 497.

On question of court's failure to charge on manslaughter: King v. State, 13 Texas Crim. App., 277; Branch's Crim. Law, sec. 504.

*C. C. McDonald,* Assistant Attorney General, for the State.—On ques-

tion of court's failure to charge on manslaughter: State v. Pollard, 40 S. W. Rep., 949; State v. Clay, 100 id., 439.

HARPER, JUDGE.—Appellant was convicted of murder and his punishment assessed at twenty-five years confinement in the State penitentiary.

Appellant was a boy seventeen years of age, attending the Newport public school. Deceased, J. G. Wright, was the teacher in charge of the school. Appellant handed in a composition, written in part in his handwriting and in part in the handwriting of a young lady. On the day of the homicide deceased was criticising this paper; said he was going to give no grade on it, and that he was going to report the matter to the pupil's parents. Appellant spoke up and said, "That he could report,—he did not guess anybody cared." The teacher remarked, "Don't you get too smart or sassy back there," and after making this remark started to the seat occupied by appellant. As to whether the teacher spoke in an angry tone of voice, or in his usual tone, is a disputed fact in the testimony, as also his looks and actions on that occasion. The State's evidence is that when deceased got in about ten or twelve steps of appellant, appellant got up out of his seat, drew a pistol and threw it on deceased and told him to come no nearer, and when deceased did not stop, appellant shot deceased; that the teacher then got hold of appellant, when a second shot was fired. Appellant contends that the deceased spoke in an angry and threatening tone of voice; that when he started towards him he did so in an angry and threatening manner; that he had been informed the Saturday before that the teacher had said to Will Simpson that "he intended to beat him (appellant) up so his parents would not know him," and thinking he was going to carry this threat into execution, when the teacher got near him he drew his pistol and asked Mr. Wright to stop three times; that Mr. Wright kept coming, and caught him by the right shoulder, and a scuffle began, when he fired the pistol. This is a short synopsis of the testimony.

When called on to announce ready for trial the defendant moved to continue the case on account of the absence of his mother, Wells Teague and R. E. Morrow, stating what he expected to prove by each of them. This was the first application for a continuance. We will state that a continuance is no longer a matter of right, but when overruled, on motion for a new trial the allegations should be considered in the light of the evidence heard on the trial, and if the absent testimony would have been material to some issue in the case and proper diligence had been used to secure the attendance of the witness, a new trial should be granted. Appellant in the application for a continuance stated that Will Simpson on Monday before the homicide on Friday, told him he had a conversation with Professor Wright, and in the conversation Professor Wright had said he intended "to beat him (appellant) up and send him home in such shape that his people would not

know him"; that Will Simpson had since died and he could prove this fact by no other person than the witness Morrow. When the motion for a new trial was presented the affidavit of Morrow was introduced showing that if he had been present at the trial he would have testified that he heard the teacher make this statement to Simpson. Appellant on the trial testified that Simpson had told him about this conversaion, and that on the day of the homicide when Professor Wright started toward appellant he thought he was going to do what he had told Simpson he was going to do; that he came toward him with his right hand in his pocket, looking angry, and caught hold of him as if to execute the threat. No other person testified to this threat other than appellant, who testified Simpson had so told him. He could not even testify that the threat had been made, and this makes it the more apparent it was material to his case to have someone present who would testify that the threat had been made and the language used by deceased. The appellant had process issued for this witness as soon as he learned he was present when the conversation took place between Mr. Wright and Simpson; it was returned not served, but the witness in his testimony shows he was only temporarily absent from home when the sheriff returned the subpoena, and was absent not exceeding forty-eight hours. So it may be said that appellant is shown to have used diligence, unless he can be charged with the conduct of an uncle, Charlie Morris. This uncle denies getting the witness Morrow to leave, but the State introduced facts and circumstances where the court perhaps would be authorized to find as he did that this uncle was instrumental in keeping the witness from attending court. The question, therefore, is, can this appellant be charged with the acts of the uncle, for if so there was no error in overruling the motion for a new trial in so far as the witness Morrow is concerned. Appellant did not live with his uncle, but lived with his father. He is not shown to have had any connection with the uncle from the time the subpoena was issued until the time of the trial. Not being shown to have had any knowledge of the acts of the uncle, and the testimony being so material, we are of the opinion the court was in error in his ruling.

Again, as to the witness Wells Teague; there is no question this witness wilfully absented himself. His testimony, however, is material, and while to some extent cumulative, yet if he would testify as appellant states, he would support appellant in his contention that he fired no shot until after Mr. Wright had caught hold of him and the scuffle began. This is a disputed issue in the case. The conduct of Teague in wilfully absenting himself is censurable, but appellant can not be held responsible for such conduct, as he in no sense is shown to have been responsible for such conduct on the part of Teague.

It is true the testimony of his mother, if it would be as alleged, would be cumulative of that of his father, but this is the first application for a continuance. Taking the testimony of the three witnesses, the court is of the opinion that the trial court erred in not granting a new trial

when the materiality of the testimony of the absent witnesses was made so manifest.

Another bill strongly insisted on by the appellant that the court erred in not charging on manslaughter is not agreed to by all the court; however, in view of another trial we will say that the trial court should charge on manslaughter. A special charge was requested and exception reserved to the failure of the court to give it, and to the court failing to submit the issue of manslaughter in his main charge. It is contended that when there is evidence of a threat made by deceased that "he was going to beat appellant up so that his parents would not know him and send him home"; and evidence that deceased started towards appellant in an angry and threatening manner (carrying no switch or other instrument with him to administer such punishment as a teacher would ordinarily administer) and evidence that he caught appellant by the shoulder with one hand and threw the other around him as if to execute the threat, this raises the issue that appellant's mind might have been in such a state of anger, fear, resentment or rage as to render his mind incapable of cool reflection, and in the light of the threat, if believed, the other facts and circumstances would be deemed adequate cause if in fact his mind was so affected.

If deceased had gone towards appellant with a switch or other instrument usually used by teachers to administer corporeal punishment, perhaps the issue might not be in the case, but a teacher is not authorized to use his fist in administering corporeal punishment, even though the pupil so conducts himself as to be in need of and require discipline. In this case there is no evidence that the teacher intended to administer the punishment in any other way than with his fists, and it may be that the court should in a proper charge submit manslaughter on the evidence offered in behalf of appellant, and on another trial if the evidence is the same, and especially if supplemented by the testimony of Morrow, the court should properly submit that issue.

We hardly think the issue of an accidental discharge of the pistol is in the case, but rather that it was intentionally fired by appellant during the scuffle, as he puts it, and under such circumstances there was no error in refusing the special charge presenting that issue. This matter may be made clearer on another trial, and the court can so frame the charge on that issue as the evidence then adduced may authorize.

The testimony of the witness Morris in regard to what appellant told him almost immediately after the shooting, under the record we have before us, should have been admitted. It is evident that appellant was still laboring under the excitement attendant upon the shooting, and it does not appear there had been a "break or let down" as some authorities put it, in his state of mind. There had not been time nor opportunity to frame a defensive explanation, and under the broad rule in force in this State such statement would be res gestae of the transaction.

We do not think the other matters complained of present error, but

on account of the matters hereinbefore discussed this case will be reversed.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

ON REHEARING.

December 20, 1916.

PRENDERGAST, PRESIDING JUDGE (dissenting).—I have read and studied the record and every question raised in it thoroughly. I deem it useless to discuss the questions, but I can not get my consent to even impliedly consent to a reversal of this case.

I think it could be demonstrated from the record and authorities that there was no error in overruling appellant's motion for a continuance. I think he could have procured, with any reasonable diligence, the attendance of the witnesses if he had wanted them. I think that instead of wanting them, he wanted a continuance.

Without discussing it, the testimony, in my opinion, did not raise manslaughter, and the court correctly refused to charge thereon.

To my mind, it is clear that the statement by appellant to the witness Morris was not res gestae, and the court properly excluded it, as hearsay and self-serving.

I, therefore, respectfully dissent.